### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00096 (RC)** |
| **v.** | : | |
| | : | |
| **MICHAEL STEPAKOFF,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Michael Stepakoff to 14 days in custody followed by three years' probation, 60 hours of community service and $500 in restitution.

### I.    Introduction

The defendant, Michael Stepakoff, a former attorney suspended from the practice of law and a member of the clergy, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars of property damage.

Stepakoff pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G), Parading, Picketing or Demonstrating in the Capitol Building, which carries a maximum term of incarceration of six months. As explained herein, a limited restraint on his liberty is appropriate in this case because (1) Stepakoff saw rioters scaling the walls and other warning signs for danger as he approached the entrance to the Capitol; (2) he walked into the Capitol 12 minutes after the door had been

1

breached by force, while others around him climbed through windows with broken glass; (3) he spread false information on social media glorifying the events of on January 6; and (4) he maintains that he did not know that he was unauthorized to enter the Capitol during the events of January 6, despite being educated in the law as a lawyer who practiced criminal law for a decade.

Stepakoff's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement officers, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed in that disruption. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, the defendant's participation in a riot that actually succeeded in halting the Congressional certification combined with the defendant's willful blindness to the multiple warning signs for danger all around him call for a sentence of 14 days in custody followed by three years of probation.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

*Michael Stepakoff's Role in the January 6, 2021 Attack on the Capitol*

On January 4, 2021, Michael Stepakoff, a practicing rabbi, flew from his home in Florida to Washington, D.C., where he stayed for three nights.  He understood that on January 6, members of Congress were gathering to vote to certify the results of the presidential election.  Before leaving, Stepakoff made an announcement at his synagogue that he was going.[1]

On January 5, 2021, Stepakoff went to the Capitol grounds and recorded a video.  In the video, he stated, "I'm here to kind of walk the ground and stake it out a little bit in a prayerful way."  Stepakoff later explained to agents that when he said "stake it out," he meant that he was at the Capitol to pray in advance for something good to happen the following day.  He was hoping that on January 6, the Vice President would not certify the election results.

On January 6, Stepakoff attended the "Stop the Steal" rally at the Ellipse to hear former President Trump speak.  After the rally, he walked toward the Capitol, narrating videos along the way.  In one video that he posted to social media, Stepakoff walked toward the Capitol while describing a crowd of "at least a million Americans who are fed up and pissed off," who were standing outside the Capitol "storming the gates, so to speak":

> So we're marching up Pennsylvania Avenue to the Capitol building.  The Senate and House of Representatives are in session . . . There's nothing like the presence of at least a million Americans who are fed up and pissed off and are not going to stand for having our vote stolen because it's the sacred right of our people to be able to vote for our president . . . so a million strong, at least a million standing outside the Capitol, storming the gates, so to speak, is going

---

[1] Stepakoff reported to the PSR writer that he is and has been the Senior Rabbi at a Messianic synagogue, Temple New Jerusalem for the past 20 years.  PSR ¶ 56.  Stepakoff is the founder and face of the synagogue, which according to its website, draws members from five counties and nine surrounding cities in Florida.  His trip to Washington, D.C. was made in that capacity, at least in part, as he told the FBI that his travel was ministry-related, and he announced his travel plans to his congregation.

to make them think twice about what they are going to do today . . . God bless
America.

Stepakoff later told the FBI that he used the phrase "storming the gates," in a religious sense.

When Stepakoff arrived at the Capitol grounds, he narrated another video in which took
stock of the area (screenshot below).  He commented on individuals who were scaling an exterior
wall leading to the Capitol building:

**Exhibit 1**



Stepakoff narrated another video just outside the entrance to the Capitol building.  Loud
noise and cheers of the crowd can be heard along with chants of "USA, USA."  In this video, as
he approached a door to the building, Stepakoff peered around a corner and saw a line of Capitol

---

[2] Exhibit 1 is a video being provided to the Court and Defendant in advance of the hearing.  The
picture is a screen capture from that video.

Police Officers standing guard.  As he approached the building, Stepakoff stated that "there comes a time when people just say we're not going to take it":

> [U/I] our ideology of freedom and loving your brother, but there comes a time when people just say we're not going to take it.  Here we are.  We're taking our stand on Capitol Hill.  And these senators and these congressmen better listen up because they represent us.  We put 'em here.  This is our house.  Not their house.  This is our- [video cuts off]

**Exhibit 2**[3]



<hr />

[3] Exhibit 2 is a video being provided to the Court and Defendant in advance of the hearing.  The following pictures are two screen captures from that video.



Stepakoff posted these narrated videos, along with multiple others, on social media, but by January 13, 2021, he removed them.

At approximately 2:48 PM, the Senate Wing Door entrance to the U.S. Capitol, a door that had been breached and resecured less than 30 minutes earlier, was breached by a crowd of rioters for the second time:



At 2:52 PM, a friend who was not at the Capitol sent a text message to Stepakoff stating, "U inside or outside.  Members of both parties have been sent to the basement."  Stepakoff claims that he did not receive the message until later.

At 3:00 PM, Stepakoff entered the Capitol building through the Senate Wing Door with a crowd at the same time that others were climbing through the adjacent window.  He did not pass through any security checkpoint or metal detector.  Stepakoff, the rioters climbing through the window, and a knocked-downed piece of furniture are each circled below:

**Exhibit 3[4]**



He turned and walked down the hallway, passing by the damaged property along the way:

---

[4] Exhibit 3 is a video from the Closed Circuit Video of the U.S. Capitol being provided to the Court and Defendant in advance of the hearing.  The following three pictures are screen captures from that video.



After walking down the hallway, Stepakoff turned back.  He stopped and took pictures along the

way, including the following photo that agents located on his cell phone:



He also called his wife while he was inside.  She later described hearing shouting and crowds through the telephone.  By the time Stepakoff had returned to the Senate Wing Door, at least eight Capitol Police Officers had arrived to block the passage of the crowd in the opposite direction. Stepakoff approached them and took a picture:



Stepakoff appeared to state a few words to one of the officers, and then exited through the same door at 3:06 PM, about six minutes after he entered.

That evening, Stepakoff told at least one individual that the U.S. Capitol Police Officers had opened the main doors for him and others, and that they welcomed them into the Capitol Building.  The government has not identified any evidence supporting this claim.  Indeed, Stepakoff privately told his wife that it was very dangerous where he was:



Nonetheless, Stepakoff boasted on social media that he had been present at an "[e]pic and historical moment":



Later on January 6, Stepakoff posted a long message on social media.  In the message, Stepakoff gushed that he felt "privileged to have participated in an historic demonstration against one of the greatest frauds in history." He described the reports of violence as "fake news," and stated that although he was "against violence," he believed that "violence or even the breaking apart of the Republic might become inevitable if something isn't done immediately in order to ensure the integrity of the 2020 election":



**Michael Stepakoff**
1 hr · ⊕

The Save America Rally today was epic! I feel privileged to have participated in an historic demonstration against one of the greatest frauds in history – the massive, coordinated election fraud of 2020. The USA was born out of a rebellion against tyranny. Americans will not easily tolerate tyranny nor give up their liberty. The right to vote is sacred b/c the representatives who run our gov't are put there by the people. They forget that at times. The Capitol is OUR house. Not theirs. The demonstrators today had that in mind. It reminds me of when Yeshua arrived at the Temple and angrily overturned the tables in the marketplace. The seat of our gov't has been defiled by fat cats who serve themselves, not the people. They think they can defraud us and tell us what to do because they think the gov't is about them getting rich and powerful with the globalists. And the rest of us are supposed to shut up and let them tell us what to do. Not gonna happen in the USA, folks.

Tens of millions of people in this country are not going to sit back, consent and do nothing when their sacred right to vote is taken from them thru the use of rigged Dominion machines and phony ballots. Nor thru the Governors and Secretaries of State who unilaterally changed election laws at the last minute to favor their party.

I am against violence, except in cases of self-defense. There was very little violence in this demonstration, despite the fake news images being shown, it was almost completely a peaceful demonstration within the context of the first Amendment. Nothing like the riots and looting we saw this summer orchestrated by the Left. But, sadly, I think violence or even the breaking apart of the Republic might become inevitable if something isn't done immediately in order to ensure the integrity of the 2020 election. A simple forensic analysis of the ballots and Dominion machines will show exactly what actually happened. And the people opposing the audit in the swing States where the fraud happened know it. And that's why they have resisted it and stalled, hoping to get past today's date of certification by Congress. But they didn't count on over one million people gathering to #StopTheSteal

I will be posting a few videos and pics from the Capital Building. #MarchToSaveAmerica

The following day, on January 7, Stepakoff sent a text message to his mother-in-law stating, "Things got out of hand when they brought in a bus load of Antifa." He later told the FBI

that he had seen on Twitter and other news outlets that a bus of Antifa personnel dressed as "MAGA" supporters had been seen getting off a bus, but that he never saw that himself.

Five to seven days after January 6, Stepakoff removed his Facebook posts related to January 6. He claimed he did this because members of his congregation were upset at him, not to avoid criminal charges. About 10 to 14 days after January 6, Stepakoff received a call from a friend who told him that the FBI had called to ask about Stepakoff. The friend called again about a week later and told him the same thing. On January 29, 2021, Stepakoff was arrested in this case.

At his plea hearing in his Statement of Offense, Stepakoff admitted that he entered the Capitol and unlawfully demonstrated, but he would not admit that he knew at the time he entered the U.S. Capitol Building that he did not have permission to do so.

*Interview of Michael Stepakoff*

On September 13, 2021, Stepakoff participated in a voluntary FBI interview as a condition of his plea agreement. During the post-plea interview, Stepakoff admitted to entering the U.S. Capitol, but said that he saw no indication that he was not allowed to enter the building. He claimed that he did not see the wooden podium on the ground when he entered nor did he see the broken windows because he was not paying attention. He said that he never thought about turning himself into the FBI because he never believed that non-violent protesters would be in trouble. He stated that he now realizes that entering the Capitol was wrong.

*The Charges and Plea Agreement*

On January 26, 2021, Stepakoff was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) & (2) and 40 U.S.C. §§ 5104(e)(2)(D) & (G). Doc. 1. On January 29, 2021, he was arrested. On February 9, 2021, Stepakoff was charged with the same four offenses by Information.

14

Doc. 5. On September 24, 2021, he pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Picketing or Demonstrating in the Capitol Building. By plea agreement, Stepakoff agreed to pay $500 in restitution to the Department of the Treasury.

### III.     Statutory Penalties and Available Sentences

Stepakoff now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, he faces up to six months of imprisonment and a fine of up to $5,000. Stepakoff also faces up to five years' probation and must pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

Under 18 U.S.C. § 3561, a defendant "may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense." 18 U.S.C. § 3561(a)(3). Section 3561(a)(3) thus states the general rule that "imposition of both probation and straight imprisonment" in the same sentencing hearing is not permitted. *United States v. Forbes*, 172 F.3d 675, 676 (9th Cir. 1999); *see United States v. Harris*, 611 F. App'x 480, 481 (9th Cir. 2015); *United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992).

The general prohibition against sentences that combine continuous incarceration and probation does not apply, however, where the defendant is sentenced for a petty offense. *See* 18 U.S.C. § 3561(a)(3); *United States v. Posley*, 351 F. App'x 801, 809 (4th Cir. 2009). In *Posley*, the defendant, convicted of a petty offense, was sentenced to two years of probation with the first six months in prison. *Posley*, 351 F. App'x at 808. In affirming that sentence, the Fourth Circuit

concluded that Section 3651(a)(3) "[u]nquestionably" provided statutory authority to sentence the petty-offense defendant to "a term of six months of continuous imprisonment plus probation." *Id.* at 809.[5]  Permitting a combined sentence of continuous incarceration and probation for petty offenses is sensible because sentencing courts cannot impose supervised release on petty-offense defendants. *See* 18 U.S.C. § 3583(b)(3); *United States v. Jourdain*, 26 F.3d 127, 1994 WL 209914, at *1 (8th Cir. 1994) (unpublished) (plain error to impose a term of supervised release for a petty offense).

It follows that a sentencing court may impose a combined sentence of incarceration and probation where, as here, the defendant is convicted of a petty offense.[6]  The defendant pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building, which is a "petty offense" that carries a maximum penalty that does not exceed six months in prison and a $5,000 fine. *See* 18 U.S.C. § 19; *see United States v. Soderna*, 82 F.3d 1370, 1381 n.2 (7th Cir. 1996) (citations omitted) (noting that a petty offender may face a sentence of up to five years in probation). One judge in this district recently imposed such a split sentence on a Capitol breach defendant, sentencing the defendant to "the custody of the Bureau of Prisons for a term of 90 days" followed by a term of "36 months of probation."  *See United States v. Virginia Marie Spencer*, ECF Docket No 1:21-cr-00147-CKK-2 (1/7/21 Tr. at 46:25).

---

[5] The district court in *Posley* concluded that the six-month prison term was permissible as a discretionary condition of probation under 18 U.S.C. § 3563(b)(22), which permits the sentencing court to require the defendant to "satisfy such other conditions as the court may impose." *See Posley*, 351 F. App'x at 808. Because the Fourth Circuit concluded that the sentence was permitted under Section 3561(a)(3), it did not decide whether the district court's reliance on Section 3563(b)(22) was erroneous.

[6] A sentencing court in a non-petty offense case may combine incarceration and probation only where incarceration is made a condition of probation and imposed through "intermittent confinement." *Anderson*, 787 F. Supp. at 539; *see* 18 U.S.C. § 3563(b)(10) (permitting sentencing court to require the defendant as a condition of probation to "remain in custody of the Bureau of Prisons during nights, weekends, or other intervals of time").

Alternatively, the government's recommended sentence is also permissible under 18 U.S.C. § 3563(b)(10), where the period of incarceration is imposed as a condition of probation. Section 3563(b)(10) allows the court to impose incarceration at the Bureau of Prisons during "night, weekends, and other intervals of time." No "interval of time" should exceed 14 days. *See United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (discussing Section 3563(b)(10)'s legislative history, and concluding that it permits a "brief period of confinement, *e.g.*, for a week or two"); *accord United States v. Baca*, No. 11-1, 2011 WL 1045104, at *2 (C.D. Cal. Mar. 18, 2011).[7]

For the reasons described below, a sentence of 14 days in custody, 36 months of probation, and $500 in restitution is appropriate in the defendant's case.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the

---

[7]     A sentence under Section 3563(b)(10), sometimes referred to as "intermittent confinement," can involve a defendant coming in and out of a detention facility on multiple occasions. Although there is no legal constraint to imposing an "intermittent confinement" sentence along these lines, the government has refrained from requesting such a sentence in Capitol breach cases given the potential practical and logistical obstacles with an individual repeatedly entering and leaving a detention facility during an ongoing global pandemic. Although not requested by the government, at least one member of this Court has imposed intermittent sentences under Section 3563(b)(10). *See United States v. Dana Winn*, ECF Case No. 1:21-CR-00139-TNM; *United States v. Andrew Ericson*, ECF Case No. 1:21-CR-00506-TNM.

Here, imposing the government's recommended sentence—14 days of straight incarceration followed by probation—as a condition of probation under Section 3563(b)(10) would not implicate the practical and logistical obstacles involved with an "intermittent sentence" where the defendant comes in and out of a facility more than once. Instead, the government's recommended sentence has the same consequences for any defendant who serves a period of time incarcerated, is released, and then moves to post-incarceration supervision.

defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, all of the Section 3553(a) factors weigh in favor of a serious sentence, but one that is less severe than many of the others to have come before the courts. The government recommends imposing the limited restraint on liberty of 14 days in custody followed by three years' probation, 60 hours of community service and $500 in restitution

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on his or her individual conduct, each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, the Court should assess the defendant's conduct during the riot on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property

destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated  sincere remorse or contrition. While these factors are neither exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment. Had the defendant personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases.

Stepakoff understood precisely what was taking place inside the Capitol on January 6—the certification of the election results to affect the transfer of power—which he hoped would not occur.  Stepakoff saw people scaling the wall outside the U.S. Capitol building and heard the chaotic chants of the crowd as he entered the building.  As he walked through a door that had been forcibly breached only 12 minutes earlier, people climbed through broken windows on either side of him.  Stepakoff claimed not to notice.  As he walked past broken glass inside and within arms-reach of a knocked-over podium, he claimed he did not see these things because he was not paying attention.

He posted messages about "storming the gates," about violence becoming "inevitable," and that "there comes a time when people just say we're not going to take it," but he insists that he did not mean to support any violence by those statements.  While inside the Capitol building, he informed his wife that "it's very dangerous where he is," but he now insists that everything he saw was "orderly" and "calm."  PSR ¶¶ 21, 25.  Stepakoff deleted his Facebook posts, but he claims

that this was to avoid angering members of his congregation, and not to avoid detection by law enforcement.

At best, Stepakoff turned a blind eye, multiple times, to the signs of misconduct, violence and danger all around him as he approached and entered the Capitol in the midst of the siege that succeeded in halting the peaceful transfer of power.  At worst, Stepakoff understood precisely what he was a part of, and his claims to the contrary now are disingenuous.

Accordingly, the nature and the circumstances of this offense establish the need for a limited restraint on liberty in this matter.

### B.  The History and Characteristics of the Defendant

Stepakoff's history and characteristics should play an important role in determining his sentence.  On the one hand, Stepakoff has a commendable lack of criminal history, and a record of gainful employment.  These attributes weigh in his favor and have been factored into the government's sentencing recommendation. On the other hand, it is notable that Stepakoff is a nonpracticing attorney who is well educated in the law, and who should have known that his actions were both unlawful and dangerous.

According to records from the Florida Bar, Stepakoff is an attorney who began practicing law in 1990.  PSR ¶ 55.  Stepakoff reported to the PSR writer that he practiced criminal law in Florida from 1990 until 2000, and then transitioned to civil practice.  *Id*.  He stated that he stopped practicing law in 2006 after agreeing to a six-month suspension of his law license arising from a complaint from a former client.  *Id*.  Florida Bar News reported that Stepakoff was suspended from practice for six months in 2006, in part, because he "engaged in conduct involving dishonesty, fraud, deceit or misrepresentation":

> Stepakoff committed an act that is unlawful or contrary to honesty and justice, failed to act with reasonable diligence and promptness in representing a client, failed to keep a client reasonably informed about the status of a matter, charged an excessive fee or cost, and *engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation*.

Exhibit 4 (emphasis added).  Stepakoff's suspension for engaging in dishonest conduct raises questions about his credibility overall, including the credibility of his claim that he did not notice signs of property damage and violence as he entered the Capitol.  More importantly, his background of practicing law—indeed, *criminal* law—for more than a decade calls into serious question his claim that he believed that he was authorized to enter the U.S. Capitol during the riot on January 6.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[8] As with the nature and circumstances of the offense, this factor supports a serious sentence for all cases arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

---

[8] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20Testimony.pdf

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The demands of general deterrence weigh in favor of a custodial sentence, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most critical factor in fashioning sentences in this case.  The violence at the Capitol on January 6 was intended to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. And it is important to convey to future potential rioters—especially those who intend to improperly

influence the democratic process—that their actions will have consequences. *See United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("Future would-be rioters must be deterred.") (statement of Judge Nichols at sentencing). There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

In a written statement to the PSR writer, Stepakoff stated, "At the time I entered the Capitol I did not know that walking in was unlawful. . . . I realize that I should have known, with my background, but when I followed the crowd into the Capitol through those doors, I did not think I was doing anything unlawful." PSR ¶ 25. Stepakoff's continued insistence that he did not understand that he was not permitted to enter the Capitol Building during the extreme circumstances of January 6, coupled with his legal training and experience in criminal law that would indicate that he should have known better, call into question both the extent of his remorse and whether he would make a similar bad decision if circumstances like the Capitol riot were to arise again. The need to send a message that the defendant cannot stick his head in the sand to follow a mob and ignore the law calls for a serious sentence in this case.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[9] Each offender must be sentenced based on his or her individual circumstances, but

---

[9] Attached to this sentencing memorandum is an appendix listing the sentences imposed on other Capitol breach defendants. While the appendix provides only high-level information about the various cases, it is intended to provide some context for the overall range of both the government's sentencing recommendations and the sentences imposed in January 6 cases to date. *See, e.g.*, *United States v. Hatley*, 1:21-cr-98 (TFH), Tr. 12/16/21 at 3 ("it's a good guideline for the Court

with the backdrop of the January 6 riot in mind. Moreover, each offender's case exists on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not become the default.[10] *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth).

The government and the sentencing courts have made meaningful distinctions between previously sentenced offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

The defendant has pleaded guilty to Count Four of the Information, charging him with Parading, Picketing or Demonstrating the Capitol Building, a violation of 40 U.S.C.

---

to understand the variety of sentences that have been given [referencing the government's sentencing chart]") (statement of Judge Hogan).

[10]   Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

§ 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside, the nature of any statements he made (on social media or otherwise), his history and characteristics, including criminal history and other relevant background—help explain the differing recommendations and sentences. And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

As the number of sentences in the Capitol breach misdemeanor cases increase and the pool of comparators grows, the effect on sentences of obviously aggravating considerations should become more apparent. The same is true for obviously mitigating factors, such as a defendant's efforts to prevent assaults on police. Here, to avoid unwarranted sentencing disparities, the Court should also consider the sentence imposed in the following cases:

*United States v. Mazzocco* involved a defendant with many similarities to Stepakoff. Mazzocco, a man with no criminal history and a record of gainful employment, entered the Capitol

through the Senate Wing Door at 3:10 pm (ten minutes after Stepakoff), walked to the Crypt area, took several selfie photographs, and left through the Senate Wing door about 12 minutes later. Mazzocco also posted to Facebook a photograph of himself outside the Capitol with the caption, "The capital [sic] is ours!" and downplayed the seriousness of the events on social media. Unlike Stepakoff, Mazzocco was one of the first ten Capitol Riot defendants to accept responsibility for his conduct, reaching out to the government within days of his arrest to resolve the matter. The other critical difference between the cases is that Stepakoff is a former criminal defense attorney, someone well-positioned to know the illegality of his conduct and its potential consequences. In *Mazzocco*, the government requested three years of probation, including three months of home confinement, 60 hours of community services and $500 in restitution. The court sentenced Mazzocco to 45 days' incarceration, 60 hours of community service and $500 in restitution. *See United States v. Mazzocco*, Case No. 21-CR-0054 (TSC) (10/4/21 Sentencing Tr.).

In *United States v. Pham*, the defendant, an 18-year Houston Police Officer with no criminal history, spent approximately 20 minutes in the Capitol building which included walking through House Leader Kevin McCarthy's office suite. He, like Stepakoff, took selfie photographs inside and outside of the Capitol, and posted one to social media that he promptly took down. Unlike Stepakoff, he voluntarily spoke to the FBI before his arrest. While he initially denied entering the Capitol, he quickly admitted that he did enter the building. He insisted that he did not see signs of violence or warning signs of danger when he entered, a claim that the court found suspect. The government, emphasizing the position of trust held by the defendant as a police officer, requested 60 days' incarceration and $500 in restitution. The court sentenced Pham to 45 days' incarceration, a $1000 fine, and $500 in restitution. Although Pham spent more time in the

Capitol than Stepakoff, they otherwise share many common attributes. *See United States v. Pham*, Case No. 21-CR-00109 (TJK) (10/10/21 Sentencing Tr.).

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Michael Stepakoff to 14 days of incarceration, three years of probation 60 hours of community service and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and

deters future crime by imposing limited restrictions on his liberty as a consequence of his behavior, while recognizing that his role was less serious than many others who participated in the events of January 6.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By: */s/ Alison B. Prout*
ALISON B. PROUT
Assistant United States Attorney
Georgia Bar No. 141666
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
(404) 581-6000
alison.prout@usdoj.gov

28

**APPENDIX**

Table 1: Cases in which the government recommended a probation sentence without home detention[11]

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Morgan-Lloyd, Anna | 1:21-CR-00164-RCL | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, 120 community service hours, $500 restitution |
| Ehrke, Valerie | 1:21-CR-00097-PLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, $500 restitution |
| Bissey, Donna | 1:21-CR-00165-TSC | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 14 days incarceration, 60 hours community service, $500 restitution |
| Hiles, Jacob | 1:21-CR-00155-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Wangler, Douglas | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 60 hours of community service, $500 restitution |
| Harrison, Bruce | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 48 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 60 hours of community service, $500 restitution |

---

[11] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Table 2: Cases in which the government recommended a probation sentence with home detention

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Bustle, Jessica | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 40 hours community service, $500 restitution | 2 months of home detention, 24 months' probation, 40 hours community service, $500 restitution |
| Bustle, Joshua | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 40 hours community service, $500 restitution | 1 month home detention, 24 months' probation, 40 hours community service, $500 restitution |
| Doyle, Danielle | 1:21-CR-00324-TNM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 probation | 2 months' probation, $3,000 fine, $500 restitution |
| Bennett, Andrew | 1:21-CR-00227-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 3 months of home detention, 24 months' probation, 80 hours community service, $500 restitution |
| Mazzocco, Matthew | 1:21-CR-00054-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 45 days incarceration, 60 hours community service[12], $500 restitution |
| Rosa, Eliel | 1:21-CR-00068-TNM | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 12 months' probation, 100 hours community service, $500 restitution |

---

[12] The government believes the Court's 10/4/2021 minute entry in this case is incorrect and the sentence requires 60 *hours* of community service, not 60 *months*.

| Gallagher, Thomas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, a fine, and $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
|---|---|---|---|---|
| Vinson, Thomas | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 3 years' probation, 60 hours community service, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |
| Dillon, Brittiany | 1:21-CR-00360-DLF | 40 U.S.C. § 5104(e)(2)(D) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months home detention, 3 years' probation, $500 restitution |
| Sanders, Jonathan | 1:21-CR-00384-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, 60 hours community service, $500 restitution |
| Fitchett, Cindy | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Sweet, Douglas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Cordon, Sean | 1:21-CR-00269-TNM | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months' probation, $4000 fine |
| Wilkerson, John IV | 1:21-CR-00302-CRC | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, $2500 fine, 60 hours community service, $500 restitution |
| Jones, Caleb | 1:21-CR-00321-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months home detention, 24 months' probation, $500 restitution, 100 hours community service |

| Brown, Terry | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, $500 restitution, 60 hours community service |
|---|---|---|---|---|
| Wrigley, Andrew | 1:21-CR-00042-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 18 months' probation, $2000 fine, $500 restitution, 60 hours community service |
| Parks, Jennifer | 1:21-CR-00363-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, $500 restitution, 60 hours community service |
| Reimler, Nicholas | 1:21-CR-00239-RDM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Miller, Brandon | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 20 days incarceration, 60 hours community service, $500 restitution |
| Miller, Stephanie | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 14 days incarceration, 60 hours community service, $500 restitution |
| Hatley, Andrew | 1:21-CR-00098-TFH | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, $500 restitution |
| Pert, Rachael | 1:21-CR-00139-TNM | 18 U.S.C. § 1752(a)(1) | 3 months home detention, 24 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 100 hours community service, $500 restitution |
| Winn, Dana | 1:21-CR-00139-TNM | 18 U.S.C. § 1752(a)(1) | 3 months home detention, 24 months' probation, 40 hours community service, $500 restitution | 10 days incarceration (weekends), 12 months' probation, 100 hours community service, $500 restitution |

| Wickersham, Gary | 1:21-CR-00606-RCL | 40 U.S.C. § 5104(e)(2)(G) | 4 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 3 months home detention, 36 months' probation, $2000 fine, $500 restitution |
|---|---|---|---|---|

Table 3: Cases in which the government recommended a sentence of incarceration

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Curzio, Michael | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | Not applicable | 6 months incarceration (time served), $500 restitution |
| Hodgkins, Paul | 1:21-CR-00188-RDM | 18 U.S.C. § 1512(c)(2) | 18 months incarceration | 8 months incarceration, 24 months' supervised release, $2000 restitution |
| Dresch, Karl | 1:21-CR-00071-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration (time served), $500 restitution | 6 months incarceration (time served), $500 restitution |
| Jancart, Derek | 1:21-CR-00148-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months incarceration, $500 restitution | 45 days incarceration, $500 restitution |
| Rau, Erik | 1:21-CR-00467-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months incarceration, $500 restitution | 45 days incarceration, $500 restitution |
| Hemenway, Edward | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Reeder, Robert | 1:21-CR-00166-TFH | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration, $500 restitution | 3 months incarceration, $500 restitution |
| Bauer, Robert | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Vinson, Lori | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |
| Griffith, Jack | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 3 months incarceration, $500 restitution | 90 days home detention, 36 months' probation, $500 restitution |
| Torrens, Eric | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 2 weeks incarceration, $500 restitution | 90 days home detention, 36 months' probation, $500 restitution |

| Gruppo, Leonard | 1:21-CR-00391-BAH | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 90 days home detention, 24 months' probation, $3,000 fine, $500 restitution |
|---|---|---|---|---|
| Ryan, Jenna | 1:21-CR-00050-CRC | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $1000 fine, $500 restitution |
| Croy, Glenn | 1:21-CR-00162-BAH | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 90 days home detention, 14 days community correctional facility, 36 months' probation, $500 restitution |
| Stotts, Jordan | 1:21-CR-00272-TJK | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 60 days home detention, 24 months' probation, $500 restitution, 60 hours community service |
| Fairlamb, Scott | 1:21-CR-00120-RCL | 18 U.S.C. § 1512(c)(2), 18 U.S.C. § 111(a)(1) | 44 months incarceration, 36 months' supervised release, $2000 fine | 41 months incarceration, 36 months supervised release, $2000 restitution |
| Camper, John | 1:21-CR-00325-CKK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $500 restitution, 60 hours community service |
| Rukstales, Bradley | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Cordon, Kevin | 1:21-CR-00277-TNM | 18 U.S.C. § 1752(a)(1) | 30 days incarceration, 12 months supervised release, $500 restitution | 12 months' probation, 100 hours community service, $4000 fine, $500 restitution |
| Chansley, Jacob | 1:21-CR-00003-RCL | 18 U.S.C. § 1512(c)(2) | 51 months incarceration, 36 months supervised release, $2000 restitution | 41 months incarceration, 36 months supervised release, $2000 restitution |
| Mish, David | 1:21-CR-00112-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Lolos, John | 1:21-CR-00243-APM | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 14 days incarceration, $500 restitution |
| Scavo, Frank | 1:21-CR-00254-RCL | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 60 days incarceration, $5000 fine, $500 restitution |
| Abual-Ragheb, Rasha | 1:21-CR-00043-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 60 days home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Peterson, Russell | 1:21-CR-00309-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |

| Simon, Mark | 1:21-CR-00067-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 35 days incarceration, $500 restitution |
|---|---|---|---|---|
| Ericson, Andrew | 1:21-CR-00506-TNM | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 20 days incarceration (consecutive weekends), 24 months' probation, $500 restitution |
| Pham, Tam Dinh | 1:21-CR-00109-TJK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 45 days incarceration, $1000 fine, $500 restitution |
| Nelson, Brandon | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $2500 fine, $500 restitution, 50 hours community service |
| Markofski, Abram | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $1000 fine, $500 restitution, 50 hours community service |
| Marquez, Felipe | 1:21-CR-00136-RC | 18 U.S.C. § 1752(a)(2) | 4 months incarceration, 1 year supervised release, $500 restitution | 3 months home detention, 18 months' probation, $500 restitution |
| Meredith, Cleveland | 1:21-CR-00159-ABJ | 18 U.S.C. § 875(c) | Midrange of 37-46 months incarceration | 28 months incarceration, 36 months supervised release |
| Sorvisto, Jeremy | 1:21-CR-00320-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Mariotto, Anthony | 1:21-CR-00094-RBW | 40 U.S.C. § 5104(e)(2)(G) | 4 months incarceration, 36 months' probation, $500 restitution | 36 months' probation, 250 hours community service, $5000 fine, $500 |
| Courtright, Gracyn | 1:21-CR-00072-CRC | 18 U.S.C. § 1752(a)(1) | 6 months incarceration, 12 months' supervised release, 60 hours community service, $500 restitution | 1 month incarceration, 12 months' supervised release, 60 hours community service, $500 restitution |
| Palmer, Robert | 1:21-CR-00328-TSC | 18 U.S.C. § 111(a) and (b) | 63 months incarceration, 36 months supervised release, $2000 restitution | 63 months incarceration, 36 months supervised release, $2000 restitution, |
| Thompson, Devlin | 1:21-CR-00461-RCL | 18 U.S.C. § 111(a) and (b) | 48 months incarceration, 36 months supervised release, $2000 restitution | 46 months incarceration, 36 months supervised release, $2000 restitution |
| Edwards, Gary | 1:21-CR-00366-JEB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, 24 months' probation, $500 restitution | 12 months' probation, $2500 fine, 200 hours of community service, $500 restitution |

| Tutrow, Israel | 1:21-CR-00310-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 2 months home detention, 36 months' probation, $500 restitution |
|---|---|---|---|---|
| Ridge IV, Leonard | 1:21-CR-00406-JEB | 18 U.S.C. § 1752(a)(1) | 45 days incarceration, $500 restitution | 14 days consecutive incarceration, $1000 fine, 1 year supervised release, 100 hours community service, $500 restitution |
| Perretta, Nicholas | 1:21-CR-00539-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Vukich, Mitchell | 1:21-CR-00539-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |